340 P.2d 855

C. H. HALL, Clarence T. Hall, William H. Hall, Mrs. Vivian Hartman and Gordon A. Hall, Plaintiffs-Appellants,

v.

BANNOCK COUNTY, Polly Ann Parisot and Ruth E. Larson, Defendants-Respondents.

No. 8645.

Supreme Court of Idaho.

June 9, 1959.

Anderson & Anderson, Pocatello, for appellants.

Merrill & Merrill, Hugh C. Maguire, Pocatello, for respondents.

KNUDSON, Justice.

The material allegations of appellants' complaint are that the appellants are the surviving husband and all of the heirs-at-law of Ruth T. Hall, deceased. That Bannock County is the owner and operator of the Bannock Memorial Hospital and the other respondents are employees of the hospital. That decedent Ruth T. Hall entered the hospital on July 9, 1956 and on July 10, 1956 underwent major surgery at the hands of Dr. O. F. Call. That following the surgery said decedent remained in the recovery room for a short time following which she was, by the respondents Parisot and Larson, transferred to her hospital room. Decedent was about fifty-eight years of age and

weighed in excess of 200 pounds. That during the transfer of decedent from the transfer cot to her bed the respondent nurses carelessly and negligently raised her up and let her fall on the bed or cot in such manner as to cause injury to the said Ruth T. Hall as a result of which she died approximately twenty-four hours later. That the negligence of the respondent hospital consisted of failing to supply and furnish sufficient help and assistance to properly and safely transfer the decedent from the recovery room to her hospital bed and the negligence of the respondent nurses consisted in permitting the decedent to fall during the transfer. Respondents' answer denies all of the allegations of negligence and damage. The case was tried to a jury and judgment entered upon a verdict in favor of respondents. Appellants' motion for a new trial was denied and this appeal is from the judgment and the order denying appellants' motion for a new trial.

Respondents urge that appellants are not entitled to be heard upon their attempted appeal from the judgment entered for the reason that their notice of appeal was not filed within the time provided by law. The judgment herein was entered June 19, 1957. The motion for a new trial was filed June 27, 1957. Notice of appeal and appeal bond were filed December 11, 1957. Sec. 13–201 I.C. was amended by chapter 105 of the Idaho Session Laws of 1957, which amendment became effective September 2, 1957. The amended statute provides in part as follows:

"An appeal may be taken to the Supreme Court from a district court.

"1. From a final judgment in an action or special proceeding commenced in * a district court * * *; * * * within * sixty days after the entry of such judgment; Provided, however, that the running of the time for appeal is terminated by a timely motion for a new trial; * * *"

Said amending chapter 105 further provides:

"Section 2. This Act shall take effect on September 2, 1957, and shall govern the taking of appeals from judgments entered on and after its effective date; and shall govern the taking of appeals from orders and interlocutory judgments made and entered on the minutes of the court, or filed with the clerk after its effective date. Appeals from judgments theretofore entered and from orders and interlocutory judgments thereafter made and entered on the minutes of the court, or filed with the clerk, shall be taken under the provisions of law in force at the time the judgment was entered or the order or interlocutory judgment was entered on the minutes of the court, or filed with the clerk."

The filing of the motion for a new trial having stayed the running of the time for

appeal from the judgment and the order denying the motion for a new trial having been entered after the effective date of the amendment, the appeal time was governed by the said act amending Sec. 13–201 I.C. under which an appeal from both the judgment and the order refusing the new trial may be taken within sixty days of the entry of such order.

Therefore the appeals from the judgment and the order denying motion for new trial will be considered.

Appellants' first assignment claims error for the reason that the trial court sustained an objection to the following question addressed to Dr. O. F. Call under cross-examination:

"Q. Doctor, in this regard at the time this action was commenced you were a party to the original action, is that right?"

Appellants argue that the question was asked for the purpose of showing interest and bias on the part of the witness. Immediately following the court's said ruling counsel for appellants further inquired of the witness as follows:

"Q. Dr. Call, do you have any more interest in this case than any other individual? A. No, as doctors we have an extreme interest in all our patients, and I don't know why one would have any more interest in one than any oth-

er; we have an interest in everything we do, we have a profound interest in every case."

No further attempt was made by appellants to inquire into the interest or bias of the witness. This Court has repeatedly held that the scope or extent of cross-examination tending to show interest or bias rests largely in the sound discretion of the trial court. Curtis v. Ficken, 52 Idaho 426, 16 P.2d 977; State v. Cofer, 73 Idaho 181, 249 P.2d 197. The answer sought only remotely tended to show bias. Although it would have been proper to permit the witness to answer the question we do not consider the ruling an abuse of discretion or prejudicial error.

Assignment No. 2 refers to a question propounded to the appellant C. H. Hall during his direct examination. Mr. Hall had testified in substance that shortly after the death of Mrs. Hall Dr. Call made a request of him. The court sustained an objection to a question propounded by attorney for appellants as to what the request was. Counsel was granted permission to make offer of proof later. The offer of proof is as follows:

"Come now the plaintiffs and having heretofore reserved this offer of evidence now makes the offer of evidence with relationship to the testimony of Mr. C. H. Hall at the time shortly after the death of Ruth Hall Doctor O. F.

Call motioned Mr. Hall into the hallway and stated to him and requested of him can we have an autopsy on your wife. Whereupon, Mr. Hall replied is it necessary for the purpose of making a death certificate to which Doctor Call replied no, not at all, certainly not but we would like to do it for the advancement of medical science, and whereupon Mr. Hall said no, if that is the case she has suffered enough already, and we now make the offer of this evidence and at the time Mr. Hall was present, Mr. Lloyd Call was present, and Doctor O. F. Call was present, Trainer Hall was present, and I think also Mr. Bill Hall, and we again offer this evidence."

Objection to the offer was sustained. Appellants argue that the offered evidence was important to their case showing "that Doctor O. F. Call asked that he be permitted to perform an autopsy *to find out what the cause of death was.*" Obviously the offer or proof does not support appellants' said contention. The ruling was not error.

■ Assignment No. 3 involves a ruling of the court sustaining an objection, upon the ground of hearsay, to an offer by appellants concerning a statement made by Dr. Call to one of the appellants following his examination of decedent shortly after she had been transferred to her hospital bed.

The offer was that Dr. Call then stated "that Mrs. Hall was fine and that all she needed was a little blood". This offer was made prior to any examination of or testimony given by Dr. Call and notwithstanding the fact that Dr. Call later testified at length in the case he was not interrogated concerning such statement. No proper foundation was laid for the introduction of the subject of the offer and the ruling of the court was correct.

■ It is contended under appellants' 4th assignment that the court erred in sustaining an objection to another question propounded to the witness Dr. O. F. Call during his cross-examination. The questions and answers leading up to and including the ruling are as follows:

"Q. Even though the organs have been handled roughly and there has been a large amount of cutting, that doesn't cause a shock? A. Organs are not handled roughly in the hands of a good surgeon.

"Q. I know, doctor, but I'm asking you to assume this to be true that I'm stating to you? A. I wouldn't accept it to be true.

"Q. You refuse even the assumption? A. I refuse the assumption because surgeons are not rough in the handling of tissue.

"Q. You refuse to even assume the fact to be true?

"Mr. Merrill. We object to that on the ground it is not within the issues and there is no evidence whatsoever to support the hypothesis.

"The Court. We will sustain the objection."

Since there was no allegation or proof that rough handling of decedent's organs during surgery had contributed in any respect to decedent's death the objection was well taken and the ruling proper.

■ Assignments Nos. 5 and 6 relate to instructions dealing with "proximate cause" and will be considered together. Since the only allegation of negligence relied upon by appellants is the action of the respondent nurses while transferring decedent from the transfer cot to a bed there can be no question that the giving of instruction No. 3[1] was proper. It will be noted that the instruction provides that if the death was *proximately caused* by postoperative or anesthetic shock the defend-

ants would not be liable. Under the issues involved in this case the instruction is correct. Appellants' contention that instruction No. 16A[2] defining "proximate cause" is ambiguous and confusing cannot be sustained. This Court has long approved similar instructions. Pilmer v. Boise Traction Co., Ltd., 14 Idaho 327, 94 P. 432, 15 L.R.A., N.S., 254; Linder v. City of Payette, 64 Idaho 656, 135 P.2d 440.

■ Error is claimed in refusing to give appellant's requested instruction No. 7.[3] This instruction does not correctly state the law applicable to the issues involved. Under the offered instruction any negligent act which contributes, however slightly or to any degree, would entitle plaintiffs to *recover in full*. It ignores the legal requirement that the negligent act, relied upon for right of recovery must be the act of respondents and be an intervening, independent, responsible and culminating cause which becomes the proximate cause of the injury. Linder v. City of Payette, supra.

1. "You are further instructed that if you find from a preponderance of the evidence that the death of Ruth T. Hall was proximately caused by postoperative shock or anesthetic shock, then you cannot find in favor of the plaintiffs and against the defendants."

2. "You are further instructed that before the plaintiffs can recover they must prove by a preponderance of the evidence that such negligence was the proximate cause of the injuries complained of. In this connection you are charged that the proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient, in-

tervening cause, produces the injury and without which the result would not have occurred."

3. You are further instructed, ladies and gentlemen of the jury, that although Ruth Hall may have been ill or injured from a prior cause and perhaps her life span would have been thereby curtailed, nevertheless if another, by reason of a negligent act, activates or aggravates such preexisting injury and thereby contributed to the death of Ruth Hall, there may be recovery in full, no matter how uncertain Ruth Hall's future may have been or how unlikely her recovery.

■ Under assignment No. 8 appellants contend that the court erred in refusing their requested instruction No. 6 [4]. This offered instruction is objectionable for the reason that it is susceptible of a construction to the effect that the court recognizes that respondents were guilty of some negligent acts and would therefore be prejudicial to respondents. It is also vague and confusing. It is materially different than the instruction in the case of Osier v. Consumers' Company, 41 Idaho 268, 239 P. 735 and was properly refused.

■ Under assignment No. 10 appellants complain of the refusal of the trial court to give their requested instruction No. 3 on the weight to be given the testimony of experts and the jury's right to consider or disregard it. The trial court marked this requested instruction as "covered" and an examination of the instructions given discloses that the subject matter of such requested instruction was fully and properly covered.

"It is not error to refuse to give a requested instruction where the subject matter thereof is fully and fairly covered by the instructions given by the court." State v. Rutten, 73 Idaho 25, 245 P.2d 778, 782; Benson v. Brady, 73 Idaho 553, 255 P.2d 710; Fo-

berg v. Harrison, 71 Idaho 11, 225 P. 2d 69.

Appellants assign as error the trial court's refusal to grant their motion for new trial based upon a contention that two jurors gave false answers to interrogatories during their voir dire examination; also upon the contentions that the trial court erred as claimed in assignments of error 1, 5, 7, 8 and 10. Having hereinbefore considered the last mentioned assignments and finding no error we shall consider the other stated ground for a new trial. The record does not contain a stenographic report of the voir dire proceedings in the trial court. In support of the motion appellants filed two affidavits of Gus Carr Anderson, attorney for appellants, in one of which the affiant states that the following questions were asked of Mrs. Delores Anderson upon her voir dire examination:

"Do you have any relatives that work for Bannock County?

"Are you related to any registered or practical nurse in Bannock County?"

That to each of the questions Mrs. Anderson answered in the negative. The affiant states the fact to be that Mrs. Anderson

---

4. You are further instructed, ladies and gentlemen of the jury, that negligence is a fact to be proven, either by direct or circumstantial evidence, and not presumed on conjecture or speculation, but if there be proof of probable cause whether injury resulted in consequence of the negligent acts of the defendant, such may be left to reasonable inference.

then had two sisters, one a practical nurse and one a registered nurse, and that both were then employed by Bannock County as nurses. In the other affidavit the affiant states that the following question was propounded to the juror Marinus Jensen upon his voir dire examination:

"Are you acquainted with the county commissioners?"

That Mr. Jensen replied that he did not know them, but was only acquainted by reason of the fact that they were county commissioners. The affiant states the fact to be that Mr. Jensen had loaned several thousand dollars to Emmette Spraker, one of the commissioners, and had taken mortgages upon the property of such commissioner. Affiant states that the answers of both jurors were given for the purpose of depriving the appellants of a fair and impartial trial. Attached to each of said affidavits is a list of questions which affiant states was propounded to the respective jurors.

In opposition to the motion are the affidavits of Wesley F. Merrill, one of the attorneys for respondents, wherein the affiant denies that the juror Mrs. Anderson was interrogated as to being related to any registered or practical nurse in Bannock County. He also states that when Mr. Jensen was questioned by appellants regarding his acquaintance and friendship with any county commissioner Mr. Jensen stated

that he knew in a casual manner Emmette Spraker, that this acquaintanceship would make no difference and that it would not embarrass or prejudice him in any manner. The affiant states that Mr. Jensen was never questioned as to any business relationship with the commissioner. The affiant states that while Mr. Anderson, attorney for appellants, had prepared a list of questions he did not ask each juror each of the prepared questions.

In affidavits filed by both Mrs. Anderson and Mr. Jensen they denied that they were interrogated as claimed by appellants, that they gave no untrue answers and that they were not in any respect biased or prejudiced. The affidavit of Emmette Spraker states that he is casually acquainted with Mr. Jensen, that between July, 1949 and June, 1955 Mr. Jensen provided the funds in connection with several loans to affiant which were processed through a real estate and insurance exchange. That all of such debts were paid approximately two years prior to the trial of the case.

The affidavits filed in support of the motion do not show that respondents and their attorneys were, prior to the rendition of the verdict, ignorant of the facts constituting the claimed misconduct. As to one of the jurors (Mrs. Anderson) the supporting affidavit and counter-affidavits are entirely in direct dispute while as to the other juror (Mr. Jensen) it is admitted

that the question involved was propounded to him but a direct conflict exists as concerns the answer given. Where, as here, a stenographic report of the voir dire proceedings in the trial court is not furnished and appellants rely solely upon affidavits which are disputed it necessarily involves the determination of a question of fact. Such question of fact was by the trial court resolved in favor of respondents and in accordance with the established law-its decision will not be disturbed in the absence of abuse of discretion. In the case of Say v. Hodgin, 20 Idaho 64, 116 P. 410, 411, this Court said:

> "The trial judge sees the witnesses on the witness-stand, observes the manner of their testifying, notes their apparent candor or fairness, or the want of it, hears the argument of counsel, and, in short, is in possession of many sources of information valuable in an inquiry as *to whether justice has miscarried or not*, and which cannot be made to appear in the record of the case which comes to the appellate court; and, appreciating such fact, appellate courts have so frequently held, that it may be announced as settled law, that trial courts possess a discretion to be exercised wisely in the granting or refusal of new trials, and that such discretion will not be by the appellate court disturbed unless it manifestly and clearly appears to have been exercised unwisely and to have been manifestly abused. Such has been the holding of this court in many cases." (Emphasis supplied)

In Applebaum v. Stanton, 47 Idaho 395, 276 P. 47, 49, the rule is stated as follows:

> "It is a fundamental rule that the trial court possesses a discretion, which should be exercised wisely, in granting or refusing to grant new trials, and that the appellate court will not reverse the lower court, in the exercise of such discretion, unless it is patent that the same has been abused."

In Stearns v. Graves, 62 Idaho 312, 111 P. 2d 882, 884, this Court said:

> "Nor will this court reverse the order of a trial court either denying or granting a motion for new trial unless it is patent the court has abused the sound legal discretion vested in it by law."

The following is an excerpt from Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430, 432:

> "It is settled law in this jurisdiction, and generally elsewhere, that trial courts possess a discretion to be exercised wisely in granting or refusing new trials, which discretion will not be disturbed by the appellate court unless it clearly appears to have been exercised unwisely and to have been manifestly abused."

Under the circumstances we cannot say that there has been a clear abuse of legal discretion vested in the trial court. Having reached a conclusion that no reversible error was committed the judgment is affirmed. Costs to respondents.

TAYLOR and SMITH, JJ., and MARTIN and BURTON, District Judges, concur.

PORTER, C. J., and McQUADE, J., not participating.