**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50785**

| | | |
|---|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: October 3, 2023 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JOHN DOE (2023-20), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) ) ) | |

Appeal from Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Boise Law Group; Jefferson H. West, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Peter A. Mommer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

John Doe (2023-20) appeals from the magistrate court's judgment terminating his parental rights to Jane Doe (Child). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 2, 2021, following her birth, Child was placed in foster care after testing positive for methamphetamine. A petition for hearing under the Child Protective Act (CPA) was filed on December 3, 2021, listing Child's mother and no legal father. A shelter care hearing was held on December 3, 2021, and the magistrate court awarded temporary legal custody to the Idaho

1

Department of Health and Welfare (Department). On January 26, 2022, after a disposition hearing, the magistrate court awarded legal custody to the Department.

On August 4, 2022, the State filed an amended petition, identifying a different person than John Doe (Doe) as the father. The person previously listed on the birth certificate was the husband to the mother (Mother) of Child at the time of conception and birth. On September 7, 2022, the State filed its second amended petition identifying Doe, a resident of Arizona, as the legal father based on a decree of paternity.

On November 15, 2022, the magistrate court entered the Child Protective Act Adjudicatory Decree and Order Approving Case Plan as Amended to include Doe. The November 15, 2022, case plan removed tasks 1B, 1C, and 1D from Doe's case plan. Task 1B required Doe to maintain a safe and clean home environment. Task 1C required Doe to complete a parenting class and demonstrate the skills acquired. Task 1D required Doe to complete a mental health evaluation, a substance abuse evaluation, or both, and treatment, if recommended. The only remaining task on Doe's case plan was Task 1A, which required Doe to complete an Interstate Compact home study.

On December 8, 2022, an amended petition for termination of parent-child relationship was filed. On March 14, 2023, a trial on the amended petition was held. The magistrate court entered findings of fact, conclusions of law, and a decree terminating Doe's parental rights on May 3, 2023. The court dismissed Counts I and II against Doe. Count I alleged that Doe had not complied with the court-ordered case plan. Count II alleged that Doe abandoned Child. The magistrate court concluded that the State had proven Count IV which alleged, among other things, that Doe did not have the skills and/or ability to safely parent Child. The magistrate court identified Doe's history as a sex offender as a concern of heightened risk, but concluded that status alone was insufficient to terminate Doe's parental rights. The magistrate court found that Doe "demonstrates deficits in his parenting" during the in-person visits. The magistrate court further found that Doe had not shown that he was interested in and committed to being Child's parent, as Doe was not committed to the work of day-to-day parenting and viewed Child as a possession.

The judgment as to the father was entered May 3, 2023, terminating Doe's parental rights to Child. Doe timely appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe alleges the magistrate court's judgment terminating his parental rights to Child should be reversed because: (1) the Department failed to make reasonable efforts to reunite Child with Doe; (2) Doe was not allowed to explore the bias of the social worker; (3) the record does not support a finding that Doe neglected Child; and (4) the record does not support a finding that termination of Doe's parental rights is in the best interests of Child.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a

parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## A.    Reasonable Efforts

Doe argues that the Department failed to make reasonable efforts to reunite Child with Doe by failing to implement a case plan for Doe until after the permanency goal was changed from reunification to termination and adoption.[1] Doe points to delays in obtaining DNA results which truncated the time from establishment of paternity to the termination trial.

The CPA contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. *In re Doe*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014). "However, whether the Department has made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights on the grounds of neglect." *Id*.; *see* I.C. § 16-2002(3)(b)(i)-(ii). The Department's efforts at reunification should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii). *In re Doe*, 156 Idaho at 688 n.3, 330 P.3d at 1046 n.3. To the extent Doe argues the Department failed to make reasonable efforts at reunification, such argument is irrelevant to this Court's determination of whether the magistrate court erred in terminating Doe's parental rights. Therefore, the sufficiency of the Department's efforts at reunification are not properly before this Court on appeal.

---

[1]     We note that, while Doe cites to the record in his statement of the case, there are no citations to the record in the argument section of his brief. Citations to the record are not required in the statement of the case, I.A.R. 35(a)(3), but are required in the argument section of the brief, I.A.R. 35(a)(6). This Court will not search the record on appeal for error, nor is it the Court's obligation to reference the statement of the case to find support for assertions in the argument section. *See Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 103, 113, 244 P.3d 247, 257 (Ct. App. 2010).

**B.**     **Witness Bias**

Doe contends that the magistrate court erred in sustaining the State's objections to Doe's questioning of the social worker. Specifically, the magistrate court ruled that Doe's attempts during cross-examination of the social worker to establish the social worker's bias in favor of the foster family was irrelevant. Evidence that is relevant to a material issue is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). The Supreme Court has held "that the scope or extent of cross-examination tending to show interest or bias rests largely in the sound discretion of the trial court." *Hall v. Bannock County*, 81 Idaho 256, 261, 340 P.2d 855, 857 (1959).

The magistrate court found the questions aimed at establishing the social worker's bias towards the foster family were irrelevant to whether Doe neglected Child. The magistrate court found that Doe's counsel's line of questioning of the social worker was seeking to elicit her personal desires regarding Child's placement and stated that "this court has no authority over foster placement, has no authority over adoptive placement. It's not relevant to any decision I'm going to make in this case." Questions regarding favoritism as to Child's eventual placement were not relevant to the issue of termination. The magistrate court was within its discretion in precluding Doe's questions of the social worker regarding placement bias.

**C.**     **Neglect**

The magistrate court found a statutory basis for terminating Doe's parental rights to Child based on neglect. The magistrate court found that Doe lacks the skills and/or ability to safely parent Child. On appeal, Doe argues the magistrate court erred in finding he neglected Child. Specifically, Doe argues that the magistrate court's order to remove tasks from the case plan was to the detriment of Doe because the magistrate court then relied upon Doe's alleged failures in regard to those tasks as evidence of his neglect.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without

proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The Department sought termination of Doe's parental rights based on an allegation of neglect for failing to provide proper parental care and control, or subsistence, education, medical or other care or control necessary for the children's well-being. *See* I.C. § 16-1602(31)(a). In particular, the State alleged that Doe: (1) failed to demonstrate an understanding of Child's needs; (2) failed to show an interest in Child's life after the paternity test was completed; and (3) lacked the insight and ability to raise Child.

Neglect is not found on the basis of what a parent is able to do, but rather based on what is necessary for a child's well-being. *Doe v. Doe I*, 162 Idaho 653, 659, 402 P.3d 1106, 1112 (2017). The magistrate court found, by "an abundance of clear and convincing evidence," that Doe neglected Child, including: Doe's lack of commitment to being a parent, little to no understanding of Child's developmental stages, and Doe's inability to "function in the community."

The magistrate court found that Doe's actions and statements reflected a lack of commitment to raising Child. For instance, when the Department tried to assist with helping Doe understand what Child needed during visits, Doe responded with "defensiveness and anger." Further, the magistrate court stated that "the court has grave concerns how Doe will react when faced with adversity" and the challenges of raising a toddler. During one of the three in-person visits with Child, Doe deferred to his mother for parenting duties. As to Doe's understanding of Child's developmental stages, the magistrate court noted that "Doe expected a fourteen (14) month [old child] only to reciprocate expressions of affections over a video call and became angry when she didn't."

Lastly, the magistrate court expressed grave concern over Doe's mental stability. Doe is a registered sex offender and was imprisoned for five years from a conviction in 2002. Doe testified that he received full SSI disability and that his five years in prison "institutionalized him such that

he cannot function in the community." The magistrate court saw no physical limitations which would qualify Doe for SSI benefits and understandably concluded that Doe's actions and testimony that he is unable to function in the community was due to mental health issues. The magistrate court expressed "significant concern" about Doe's basic ability to solo parent a vulnerable child.

Doe argues that the magistrate court's basis for neglect is erroneous because the November 2022 order removed two tasks from the case plan that would have provided the court with the necessary information to address its concerns. Specifically, Doe argues that it was error to remove the parenting class and mental health and substance abuse evaluation and treatment tasks from the case plan and then use those insufficiencies as justification to terminate his parental rights.

While a case plan may provide, as Doe claims, a "road map" as to what steps a parent needs to accomplish in order to regain custody of a child, it does not delimit the bases for finding neglect under I.C. § 16-2002(31)(a). Regardless of any tasks in a case plan, Doe would still need to demonstrate the skills, abilities, and wherewithal to parent Child. The magistrate court dismissed the count in the petition for termination which was based on the case plan. As outlined above, the magistrate court instead found clear and convincing evidence that Doe was not able to provide proper parental care and control, or subsistence, education, medical or other care or control necessary for Child's well-being. I.C. § 16-2002(31)(a). The magistrate court's findings are supported by substantial and competent evidence in the record.

## D.     Best Interests of Child

Doe argues that termination of his parental rights is not in Child's best interests. The State contends that substantial and competent evidence supports the magistrate court's finding that termination is in Child's best interests.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it

is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court determined that termination is in the best interests of Child based on numerous findings. The magistrate court found that Doe did not show interest or commitment to being Child's parent. Doe was first told it was possible that he was Child's father when Mother gave birth and Child was in the Department's custody. Doe requested a paternity test after he was contacted by the Department and told that he may be Child's father. Several months passed between ordering the test and Doe's completion of the test. The magistrate court found that Doe did not seek involvement in the child protection case. These actions (or inactions) demonstrated to the magistrate court that Doe was not interested in participating in Child's life until he first requested a visit at the advice of his attorney, nearly three months after DNA established his paternity.

Further, the magistrate court found that Doe has not demonstrated the ability to meet Child's basic needs. Doe has not taken any action to familiarize himself with Child's medical or service providers. The magistrate court concluded that "the unspecified basis for [Doe's] full disability further calls into question his capacity to provide a safe, stable home for a sixteen (16) month old child."

Moreover, the magistrate court noted that the foster family is the only family that Child has known since the day after her birth when she was taken into the Department's custody. The magistrate court found that Child is "thriving in [the foster family's] home and she is deeply attached to her foster siblings." The magistrate court appropriately concluded, based on clear and convincing evidence, that Child's best interests are not to remove Child from the "only family" Child has known to be with a "complete stranger" that has only spent "fifteen hours" with her. These factors are objective grounds that provide substantial and competent evidence that termination is in the best interests of Child.

## IV.

## CONCLUSION

Doe's challenge to the Department's efforts at reunification is not properly on appeal to this Court, but should have been raised in the child protection case. Substantial and competent evidence supports the magistrate court's finding that Doe neglected the child and that it is in the best interests of Child to terminate Doe's parental rights, and Doe failed to establish any error in

8

the magistrate court's evidentiary rulings.  Therefore, the judgment terminating Doe's parental rights is affirmed.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.